Scott M. Kendall
Alaska Bar No. 0405019
Samuel G. Gottstein
Alaska Bar No. 1511099
Holmes Weddle & Barcott, P.C.
701 West 8th Avenue, Ste. 700
Anchorage, AK 99501
Phone: 907.274.0666
Fax: 907.277.4657
smkendall@hwb-law.com
sgottstein@hwb-law.com

Jason Harrow
Equal Citizens
3243B S. La Cienega Blvd.
Los Angeles, CA 90016
jason@equalcitizens.us

Michael Donofrio
Stris & Maher LLP
28 Elm St., 2d Fl.
Montpelier, VT 05602
michael.donofrio@strismaher.com
*Attorneys for Plaintiffs*

## IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABILITY LAW CENTER OF ALASKA, NATIVE PEOPLES ACTION COMMUNITY FUND, ALASKA PUBLIC INTEREST RESEARCH GROUP, ALEIJA STOVER, and CAMILLE ROSE NELSON, <br> Plaintiffs, <br> v. <br><br> KEVIN MEYER, LIEUTENANT GOVERNOR OF ALASKA and the STATE OF ALASKA, DIVISION OF ELECTIONS, <br> Defendants. | Case No. 3:20-cv-173-JMK |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (ORAL ARGUMENT REQUESTED)

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 1

*(left margin, vertical text)* **HOLMES WEDDLE & BARCOTT, PC** 701 WEST EIGHTH AVENUE SUITE 700 ANCHORAGE, AK 99501-3408 TELEPHONE (907) 274-0666 FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

**INTRODUCTION**

Defendants Kevin Meyer and the State of Alaska, Division of Elections are charged with operating safe and fair elections in this State in the midst of a pandemic. In May, Meyer promised to "ensure *all* Alaskans have the greatest access to vote." But since then Defendants have reneged on that promise, and decided to send out applications for absentee ballots only to registered voters age 65 or older.

This selective and under-inclusive mailing violates the Federal and State Constitutions, along with the Americans with Disabilities Act. It also adversely impacts Plaintiffs Disability Law Center Of Alaska, Native Peoples Action Community Fund, Alaska Public Interest Research Group, Aleija Stover, and Camille Rose Nelson. Plaintiffs, and the thousands of voters they advocate for, all wish to vote as easily and safely as possible in the upcoming primary and general elections. All they ask is for all eligible Alaska voters to be treated the same, regardless of age.

Defendants' improper actions come on the eve of primary and general elections during the global pandemic caused by COVID-19, and thus require an immediate remedy. Therefore, Plaintiffs respectfully request that this Court should grant a preliminary injunction ordering Defendants 1) to immediately mail absentee ballot applications to all eligible Alaskan voters

who have not yet received one;[1] and 2) to provide equal assistance in voting absentee to all eligible voters during the general election.

## I.    FACTUAL BACKGROUND

The facts of this case are straightforward and should not be in dispute.[2] In the midst of a historic pandemic in which *all* Alaskans have been cautioned to stay home as much as possible and avoid public gatherings—including the unavoidable and often lengthy indoor gatherings in-person voting requires—Defendants have decided to proactively mail absentee ballot applications *only* to Alaska voters 65 or older. As explained below, this unconstitutional and arbitrary discrimination, which has created two age-based classes of voters, can and should be remedied by this Court without delay.

### A. The Impact Of COVID-19 On Alaskans

COVID-19, a highly contagious and harmful respiratory disease, has caused substantial changes to life in Alaska and around the world. Emergency responses to COVID-19 in Alaska began in March 2020, and have included stay-at-home orders and school and travel restrictions.[3] All of these responses

---

[1] Voters age 65 and older, as well as those who have already been sent an application via another process, can all be excluded from such a mailing.

[2] This motion is supported by the affidavit of Scott M. Kendall and attached exhibits.

[3] State of Alaska, "COVID-19 Health Mandates," https://covid19.alaska.gov/health-mandates/.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

have been and continue to be implemented with the intent of limiting in-person contacts to slow the spread of the disease and its resulting negative health consequences.

Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") as an initial federal response to COVID-19 on March 27, 2020.[4] A portion of the $2.2 trillion CARES Act package includes $400 million in emergency funds so that states will have additional resources to conduct elections during the pandemic, with $3 million going to the State of Alaska for that very purpose.[5] And, recognizing that there would likely be a substantial increase in demand for absentee voting this year, the Alaska legislature authorized Defendants to either conduct elections this year entirely by mail or issue additional emergency regulations as necessary to run safe election.[6] However, the legislation did *not* authorize assisting only one demographic group of voters while excluding all others.

Unfortunately, the number of positive cases and deaths attributable to COVID-19 continue to rise both nationally and in Alaska. When the CARES Act was signed on March 27, there were approximately 100,000 positive tests

---

[4] *See* State of Alaska, "COVID-19 Response Funding," May 12, 2020, https://bit.ly/AKFunding.

[5] *Id.* at 2.

[6] 2020 SLA ch. 10, § 9 (enacted April 9, 2020) (2019 SB 241).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 4

and 1,200 attributable deaths in the United States, with approximately 69 confirmed cases and 1 death in Alaska.[7] As of July 21, there were over 3.8 million cases and over 140,000 deaths in the United States, and over 2,000 cases and 18 deaths of Alaskans.[8] And the number of cases is currently on the rise in Alaska, with approximately 1,650 new positive cases since May 1.[9] Those aged 20-29 currently represent the largest cohort of those who have confirmed cases of COVID-19 in Alaska, *while those under the age of 60 comprise roughly 85% of total cases*.[10]

The pandemic affects every Alaskan because, put simply, every Alaskan is at risk for COVID-19. All Alaskans have therefore been asked to "[k]eep [their] interactions and circles small when possible" to reduce the spread of the disease.[11] And unfortunately, approximately one-third of Alaskans have at least one medical condition that puts them at a higher risk of complications

---

[7] All historical data comes from the COVID Tracking Project. National historical data is available at https://covidtracking.com/data/us-daily, while Alaska historical data is available at https://covidtracking.com/data/state/alaska.

[8] Alaska's official dashboard, which is updated daily, is available at https://coronavirus-response-alaska-dhss.hub.arcgis.com/.

[9] *See* https://covidtracking.com/data/state/alaska.

[10] Frequently updated age data is available at the State's official COVID-19 dashboard, https://coronavirus-response-alaska-dhss.hub.arcgis.com.

[11] State of Alaska, "COVID-19 Health Mandates," https://covid19.alaska.gov/health-mandates/.

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 5

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

from COVID-19.[12] This statistic is consistent with guidance from the U.S. Centers for Disease Control and Prevention ("CDC"), which has recently placed a greater emphasis on the risks presented by a number of health conditions, regardless of age—and, in fact, has "jettison[ed] earlier warnings that mainly those 65 and older faced higher risk" of severe illness, instead saying more simply that risk increases with age and the presence of certain underlying medical conditions.[13] And with limited or no hospital beds for treating severe manifestations of COVID-19 in many remote parts of Alaska, keeping overall infections to a minimum across the state is especially important to limit the negative impacts.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[12] Zac Hollander, et al., "State's Active COVID-19 Cases Reach New High," *Anchorage Daily News* (June 25, 2020), https://www.adn.com/alaska-news/2020/06/24/alaskas-daily-active-covid-19-case-count-reaches-another-new-high/ (describing testimony of Dr. Anne Zink, the state's chief medical officer).

[13] Helen Branswell, "CDC Broadens Guidance On Americans Facing Risk Of Severe COVID-19" (June 25, 2020), https://www.statnews.com/2020/06/25/cdc-broadens-guidance-on-americans-facing-risk-of-severe-covid-19/; *see also* CDC, "Your Health: People Who Need To Take Extra Precautions," (updated July 21, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (noting, under medical conditions heading, that "people of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19" while also failing to group those 65 and older into their own risk category and instead noting that "[a]s you get older, your risk for severe illness from COVID-19 increases.").

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 6

## B. Defendants' Responses To COVID-19

Although Defendants declined to conduct statewide primary and general elections entirely by mail, Lieutenant Governor Meyer recognized that "balancing the interest in public health with the constitutional right to vote means the 2020 election will be unlike any we have seen in our lifetime."[14] To address this challenge, he promised to "enhance our outreach efforts to ensure *all* Alaskans have the greatest access to vote in the 2020 primary election,"[15] and he has engaged in public outreach to encourage applying before the deadline, ten days before the election under Alaska law.[16] Defendants have also established a new online absentee ballot application, accessible by voters who have either a driver's license or an identification card from the DMV.[17]

But in late June, Defendants announced an intention to renege on this promise to "ensure all Alaskans have the greatest access to vote," instead

---

[14] Office of Lt. Governor Kevin Meyer, Press Release: State of Alaska to Focus on Ballot Access for August Primary (May 15, 2020), https://bit.ly/MeyerRelease (hereinafter, "Meyer Press Release").

[15] *Id.* (emphasis added).

[16] Alaska permits any voter to request a mail-in ballot; no justification is required. *See* AS 12.20.081(b).

[17] *See* Alaska Div. of Elections, "By-Mail Ballot Delivery," https://www.elections.alaska.gov/Core/votingbymail.php ("Apply paperless! . . . You must have a valid Alaska Driver's License or State ID to use this option.).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

mailing absentee ballot applications only to Alaska voters 65 and older.[18] Although there is no official explanation for the age discrimination—because it was not made pursuant to any statute or validly-enacted regulation—public attempts at explaining it have been illogical.

Lieutenant Governor Meyer attempted to justify the discriminatory mailing by noting that older Alaskans "are a very vulnerable group" and that many "are worried about the virus."[19] He said that in particular older poll workers may be reluctant to show up, and he recognized that "if they're not comfortable, we don't want them to come out."[20] He did not explain why other groups of vulnerable Alaskans did not receive the mailing, nor why it could be safe for voters and poll workers if voters 64 and younger to gather in person to vote but not voters 65 and older. Defendants have also indicated that, especially in light of the $3 million in extra funding from the CARES Act, cost was "not a factor" in the decision to limit who received an absentee ballot

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[18] Andrew Kitchenman, "State Will Mail Absentee Ballot Applications To Seniors. Critics Say That Makes Ballot Access Unequal." *Alaska Public Media* (June 21, 2020), https://www.alaskapublic.org/2020/06/21/state-will-mail-absentee-ballot-applications-to-seniors-critics-say-that-suppresses-young-minority-votes/.

[19] *Id.*

[20] *Id.*

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 8

application.[21] Defendants have not explained what changed since the earlier promise to enhance voting opportunities for *all* Alaskans, not just those over 65. By making this decision, Defendants have created two age-based classes of voters; those who were proactively mailed an absentee ballot application, and those who were not.

## C. Plaintiffs File This Lawsuit

Plaintiffs are three public interest groups and two individual voters who are adversely affected by the discriminatory mailing.

Plaintiff Disability Law Center is the federally mandated Protection and Advocacy System for the State of Alaska empowered to provide legal advocacy for people with disabilities anywhere in Alaska.[22] Plaintiff Native Peoples Action Community Fund is a 501(c)(3) non-profit that advocates for Alaska Native causes, including advocating in a non-partisan manner for Alaska Natives' opportunities to vote.[23] And Plaintiff Alaska Public Interest Research Group is a non-partisan advocacy and research organization that focuses on good governance.[24]

---

[21] *See* Letter from Representative Matt Claman to Lieutenant Governor Kevin Meyer, at 1 (June 29, 2020) (recounting the substance of their telephone call during the week of June 22) (Exhibit B).

[22] *See* Amended Complaint, at ¶ 22 (July 22, 2020) [hereinafter Complaint].

[23] *Id.* at ¶ 23.

[24] *Id.* at ¶ 24.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Plaintiffs also include two registered voters who are under the age of 65. Plaintiff Aleija Stover is a 21-year-old registered voter in Anchorage.[25] Ms. Stover suffers from chronic severe asthma, and she is among the many Alaskans at high risk of complications were she to contract COVID-19.[26] Plaintiff Camille Rose Nelson is a 24-year-old registered voter living in Kotzebue.[27] Ms. Nelson has access only to a single significant medical facility in Kotzebue, Maniilaq Health Center, which has only approximately a dozen in-patient beds.[28] Given the small number of in-patient hospital beds in Kotzebue, Ms. Nelson is concerned that the medical system could be quickly overwhelmed if a large COVID-19 outbreak were to occur among Kotzebue's approximately 3,200 residents.[29] Many other rural Alaskans have even less access to health care services than Ms. Nelson, who lives in a larger "hub" that services a whole region.

Plaintiffs and other interested parties have reached out and requested that Defendants rectify the discrimination inherent in their mailing plan.[30]

---

[25] *Id.* at ¶ 25.

[26] *Id.*

[27] *Id.* at ¶ 26.

[28] *Id.*

[29] *Id.*

[30] For instance, State Representative Matt Claman wrote a letter on June 18, 2020, urging the Division of Elections "in the strongest possible

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 10

But after confirming on or about July 13 that absentee ballot applications had actually been mailed out to voters 65 years of age and older, Plaintiffs promptly filed this suit in the Superior Court for the State of Alaska, Third Judicial District at Anchorage on July 17, 2020.[31] Defendants removed the case to the United States District Court for the District of Alaska on July 20.[32]

## II. LEGAL FRAMEWORK

### A. Standard For Ordering A Preliminary Injunction.

To obtain preliminary injunctive relief, a plaintiff must establish that it is (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in" their "favor," (4) and "that an injunction is in the public interest."[33] With regard to balancing those factors, courts in this Circuit use a "sliding scale" test, whereby "the elements of the preliminary injunction test are balanced, so that a

---

terms . . . to distribute absentee ballot applications to all registered voters in Alaska as an essential step to reduce the risks to public health during the COVID-19 pandemic." The letter is available at https://assets.documentcloud.org/documents/6951697/2020-06-18-Claman-Letter-Re-Absentee-Ballot.pdf.

[31] *See generally* Complaint.

[32] *See* Defendant's Notice of Removal, 3:20-cv-00173-JMK, Dkt. 1 (July 20, 2020).

[33] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

stronger showing of one element may offset a weaker showing of another."[34]
Thus, a preliminary injunction is appropriate when "a plaintiff raises 'serious
questions' as to the merits and 'the balance of hardships tips sharply in
[plaintiff's] favor,' " so long as the plaintiff still establishes irreparable harm
and that the injunction is in the public interest.[35]

## B. Standard For Reviewing Constitutional Violations.

"[V]oting is unquestionably a fundamental right,"[36] and "is fundamental
to our concept of democratic government."[37] Governmental restrictions or
arbitrary actions which violate fundamental constitutional rights are subject
to a greater level of scrutiny under both the United States and Alaska
Constitutions.[38] And even when a governmental action does not infringe a

---

[34] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

[35] *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 n.4 (9th Cir. 2016) (quoting *Cottrell*, 632 F.3d at 1135).

[36] *Sonneman v. State*, 969 P.2d 632, 637 (Alaska 1988) (citing *O'Callaghan v. State*, 914 P.2d 1250, 1253-54 (Alaska 1996)).

[37] *Miller v. Treadwell*, 245 P.3d 867, 868-69 (Alaska 2010) (quoting *Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995)).

[38] Under federal law, see *Reynolds* v. Sims, 377 U.S. 533, 555 (1964) (describing right to vote as fundamental). Under Alaska law, see *Miller v. Treadwell*, 245 P.3d 867, 868-69 (Alaska 2010) ("The right to vote 'is fundamental to our concept of democratic government.' " (quoting *Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995))).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

fundamental right, there must still be a rational basis to justify the infringement.[39]

## III. ARGUMENT

Plaintiffs are entitled to a preliminary injunction that will ensure all Alaska voters are treated equally.

*First*, because Defendants' selective, discriminatory mailing continues to abridge the voting rights of Alaskans under the age of 65, it is irreparably harming Plaintiffs every day that Plaintiffs and other younger Alaskans face additional hurdles in obtaining absentee ballots for upcoming elections. *Second*, Plaintiffs are likely to succeed on the merits or, at a minimum, raise serious and substantial questions, because Defendants' decision to treat voters differently on the basis of age violates the Twenty-Sixth Amendment of the United States Constitution, the Equal Protection and Due Process Clauses of the United States and Alaska Constitutions, and the ADA. *Third*, the balance of hardships tips sharply in Plaintiffs' favor because granting this motion would simply hold Defendants to their own professed intention to enhance ballot access for *all* Alaskans, while denying it would lock in reduced access for

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[39] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000) (holding that, outside of the context of voting, discriminations based on age must be rationally related to a legitimate government interest).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 13

most Alaskan voters. *Fourth* and finally, Plaintiffs seek to vindicate the public interest by making voting accessible and safe for all Alaskans on equal terms.

## A. The Selective Mailing Irreparably Harms All Alaskan Voters Under The Age Of 65.

Defendants have created an unconstitutional and unlawful imbalance between the ability of Alaskans 65 and older versus those under 65 to safely exercise their voting rights. Every day this imbalance persists, Plaintiffs, and the many thousands of voters similarly situated, suffer irreparable harm.

Defendants have directly mailed absentee ballot applications to all voters aged 65 and older. This application allows voters to opt into receiving absentee ballots by mail for the whole year—including the primary and general.[40] Any voter who wishes to vote by mail must ensure that the Division of Elections has received the application at least 10 days before an election.[41] Unfortunately, with Alaska's primary election scheduled for August 18, 2020

---

[40] See Exhibit A at 3.

[41] AS 15.20.081(b) ("An application requesting delivery of an absentee ballot to the applicant by mail must be received by the division of elections not less than 10 days before the election for which the absentee ballot is sought.").

As discussed in greater detail below, the 10-day deadline actually violates federal law with respect to the upcoming presidential election, as federal law provides that "each State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor *not later than seven days immediately prior to such election*." 52 U.S.C. § 10502(d) (emphasis added).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

and the resulting absentee ballot application deadline of August 8, Defendants' timing of the selective mailing all but foreclosed the possibility of meaningful relief, and with it the possibility of remedying Plaintiffs' harm. For the general election, the Division must receive a voter's absentee ballot application by October 24 under Alaska law. As this crucial deadline approaches, Plaintiffs' irreparable harm mounts every day they are denied equal access to the ballot box. Defendants' selective and age-discriminatory mailing, left unchecked, is causing and will continue to cause irreparable harm to Plaintiffs and hundreds of thousands of registered Alaskan voters under the age of 65.

Critically, the remedy Plaintiffs seek works no harm on Defendants. Plaintiffs' request is simple: have Defendants immediately mail absentee ballot applications—as was already done for all registered Alaskan voters aged 65 and older—to all other registered voters. Because a voter can request ballots for both the primary and general elections in a single application, this mailing need not be repeated for those voters who have opted in to vote absentee in both elections. And with $3 million of CARES Act funding available to Defendants for the specific purpose of facilitating these elections—and Defendants' apparent lack of concern over the possible cost[42]—it is difficult to

---

[42] *See* Exhibit B at 1.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

imagine any harm would result from this mailing.[43] Without it, the voting

rights of Plaintiffs and thousands they represent remain abridged.

## B. Plaintiffs Are Likely To Succeed On The Merits, Or, At, Minimum, Have Raised Serious Questions To Justify A Preliminary Injunction.

### i. Defendants' Discriminatory Mailing Violates The Twenty-Sixth Amendment Of The United States Constitution.

The text of the Twenty-Sixth Amendment, which was ratified in 1971, is

unequivocal: "The right of citizens of the United States, who are eighteen years

of age or older, to vote shall not be denied or abridged by the United States or

by any State on account of age." That text echoes the Fifteenth, Nineteenth,

and Twenty-Fourth Amendments, which direct that the right to vote shall not

be "denied or abridged" on the basis of race, sex, or the failure to pay a poll

tax.[44] Defendants would plainly violate those amendments if it mailed

---

[43] In fact, because directly mailing absentee ballot applications might decrease the demand for in-person voting on election day, this one-time mailing could actually *decrease* overall election administration costs by reducing the number of poll workers and other infrastructure needed, as well as by spreading out the requests for ballots that otherwise may come as a deluge this fall.

[44] *See Rice v. Cayetano*, 528 U.S. 495, 512 (2000) (invalidating a restriction on voting by non-native Hawaiians in certain Hawaiian elections as violative of the Fifteenth Amendment because "[t]he design of the Amendment is to reaffirm the equality of races at the most basic level of the democratic process, the exercise of the voting franchise. A resolve so absolute required language as simple in command as it was comprehensive in reach. Fundamental in purpose and effect and self-executing in operation, the Amendment prohibits all provisions denying

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

absentee ballot applications only to white voters, only to men, or only to voters who pay a tax.[45] It is equally plain that Defendants have violated the Twenty-Sixth Amendment by proactively mailing absentee ballot applications only to voters over 65.

As one Congressperson remarked during the debates leading up to ratification, the Twenty-Sixth Amendment "guarantees that citizens who are 18 years of age or older shall not be discriminated against on account of age,"[46] which was understood at the time to include younger voters.[47] And the Amendment's text, which was "modeled after similar provisions in the [Fifteenth A]mendment, which outlawed racial discrimination at the polls, and the [Nineteenth A]mendment, which enfranchised women,"[48] should be understood as language that was intended to—and does in fact—eliminate any

---

or abridging the voting franchise of any citizen or class of citizens on the basis of race.").

[45] *See Tex. Democratic Party v. Abbott*, *to be published at* 961 F.3d 389, at \*47 (5th Cir. June 4, 2020) (Ho, J., concurring) ("[I]t would presumably run afoul of the Constitution to allow only voters of a particular race to vote by mail.")

[46] 117 Cong. Rec. 7532, 7534 (1971) (remarks of Rep. Poff).

[47] *See* S. Rep. No. 92-26, at 14 (1971) ("[F]orcing young voters to undertake special burdens—obtaining absentee ballots, or traveling to one centralized location in each city, for example—in order to exercise their right to vote might well serve to dissuade them from participating in the election.").

[48] *See* 117 Cong. Rec. at 7533 (statement of Rep. Celler).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

possibility of age discrimination in voting.[49] Indeed, the U.S. Supreme Court has highlighted this similarity in the language and operation of these amendments and observed that "[t]he Constitution uses the words 'right to vote' in five separate places: the Fourteenth, Fifteenth, Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments."[50]

The language "or abridged" in the Amendment underscores that it serves to "do more than just police states' voting ages."[51] To "abridge" means to "curtail, lessen, or diminish (a right, privilege, etc.); to reduce the extent or scope of."[52] In a related context—the Voting Rights Act—Congress has defined "denial or abridgement" as a practice under which "the political processes leading to nomination or election in the State or political subdivision are *not equally open to participation by members of a class of citizens* . . . in that its members *have less opportunity than other members of the electorate* to participate in the political process and to elect representatives of their choice."[53] In sum, the Twenty-Sixth Amendment prohibits all practices that

[49] *See* Yael Bromberg, *Youth Voting Rights and the Unfulfilled Promise of the Twenty-Sixth Amendment*, 21 U. PENN. J. COST. LAW, 1105, 1161 (2019); *see also id.* at 1124-27, 1132-34.

[50] *Shelby Cty. V. Holder*, 570 U.S 529, 567 n.2 (2013).

[51] Eric S. Fish, Note, *The Twenty-Sixth Amendment Enforcement Power*, 121 YALE L.J. 1168, 1181 (2012).

[52] *Oxford English Dictionary* (3d ed. 2009).

[53] 52 U.S.C. § 10301(b) (emphasis added).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 18

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

affect the right to vote where a government makes it more difficult or unequal for one group of voters to exercise their right to vote than another group solely on the basis of age.

Defendants' decision to mail absentee ballot applications only to certain voters on the basis of age is precisely what the Twenty-Sixth Amendment explicitly prohibits. Perhaps Defendants believed their action was permissible because age is not a suspect or quasi-suspect classification in many contexts. But the Constitution requires a different answer with respect to voting.

By analogy to other identically-worded Amendments, the Twenty-Sixth Amendment prohibits any "requirement[]" that "effectively handicap[s] exercise of the franchise" even if "the abstract right to vote may remain unrestricted."[54] Defendants' discriminatory mailing does just that. To vote by absentee ballot, voters 65 and older only need to return a form that the government conveniently placed in their mailbox. But Plaintiffs, like hundreds of thousands of registered Alaskan voters younger than 65, must proactively begin the process of obtaining a ballot if they wish to vote by mail.[55]

---

[54] *Lane v. Wilson*, 307 U.S. 268, 275 (1939) (Fifteenth Amendment); *see also Harman v. Forssenius*, 380 U.S. 528 (1965) (Twenty-Fourth Amendment).

[55] Additional options all involve multiple additional steps, barriers, and requirements. For instance, younger voters may use Alaska's Online Absentee Ballot Application, but that system requires both reliable Internet access and certain forms of ID that not all eligible voters have. Younger voters may also use the state's online portal to generate and print a paper application, but that requires

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 19

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Eliminating these steps for voters 65 and older while forcing voters—including disabled voters—under 65 to take them is unconstitutional.

Because the Constitution expressly prohibits denying or abridging the right to vote "on account of age," strict scrutiny applies.[56] The State's action cannot meet that test. There is no state interest (let alone a compelling one) in imposing obstacles on voters on account of age. And the State's interest in protecting public health weighs heavily *against* Defendants selective, age-discriminatory approach: during a pandemic involving a highly-contagious disease, *all* voters, poll workers, and their families—not just older voters—are at risk. Logically, community spread through other age cohorts contracting the disease also puts Alaskans over 65 at greater risk, because they will encounter Alaskans of all ages.[57] In other words, Defendants have left the very voters

---

not only Internet access, but also access to a printer and mailing materials. And younger voters do not receive the set of instructions and cover letter sent with the absentee ballot application, which helps them navigate the complexities of the system.

[56] *Symm v. United States*, 439 U.S. 1105 (1979) (Supreme Court's only case under the Twenty-Sixth Amendment, finding that strict scrutiny was consistent with text and history of Amendment), *aff'g United States v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978); *see also League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1221 (N.D. Fla. 2018) (noting that the Twenty-Sixth Amendment contributes "added protection to that already offered by the Fourteenth Amendment"). *Cf. Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (A law that is discriminatory "on its face is subject to strict scrutiny regardless of the government's benign motive.")

[57] Zaz Hollander, "As Alaska's Daily COVID-19 Count Hits Another Near-Record, Hospitalizations Aren't Rising As Quickly," (July 9, 2020) (quoting state of

---

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 20

they claim to be protecting at risk. This illogical action cannot even survive rational basis review; needless to say, it is not narrowly tailored to advance any state interest. It therefore violates the Twenty-Sixth Amendment.[58]

Because Plaintiffs have raised a serious and substantial claim showing that Defendants' discriminatory mailing on the basis of age violates the Twenty-Sixth Amendment, this Court should grant Plaintiffs' request for a preliminary injunction on this point alone. Alternatively, because Plaintiffs are

Alaska health officials including state epidemiologist, Dr. Joe McLaughlin, as observing that "[o]ther states with spikes among younger people have experienced a subsequent uptick in cases involving older residents"), https://www.adn.com/alaska-news/2020/07/09/alaska-records-another-near-record-increase-in-daily-confirmed-coronavirus-cases/.

[58] A motions panel of the Fifth Circuit recently declined to apply strict scrutiny to its emergency review of a Texas law that discriminated on the basis of age in absentee balloting, but its reasoning is unpersuasive. *See generally Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. June 4, 2020). In concluding that only rational basis applied, the Fifth Circuit incorrectly relied on case law regarding absentee balloting that pre-dated the Twenty-Sixth Amendment and the modern expansion of vote-by-mail to conclude that age discrimination in absentee balloting did not "abridge" the "right to vote . . . on account of age." *See id.* (citing *McDonald v. Bd. of Election*, 394 U.S. 802 (1969)). Further, Judge Ho, who provided the decisive vote to stay the injunction, concurred separately to note that the preliminary injunction entered there was flawed because it did not address the fact that "equal treatment can be achieved either by withdrawal of benefits from the favored class or by extension of benefits to the excluded class." *Id.* at *48 (quotation marks omitted). But that issue is not present here, because the mailing has already gone out, and voters 65 and older have already received the benefit. There is thus no other possible remedy other than conferring that same benefit on Plaintiffs. Finally, although the U.S. Supreme Court did not disturb the Fifth Circuit's emergency decision, Justice Sotomayor wrote separately to note that the issue is "weighty and seemingly novel," and she hoped courts would "consider the merits of the legal issues . . . well in advance of the November election." *Tex. Democratic Party v. Abbott*, S. Ct. No. 19A1055 (June 26, 2020) (Sotomayor, J., respecting the denial of the application to vacate the stay).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

likely to prevail on their claim that Defendants have unlawfully abridged voting rights on the basis of age, this Court may even grant a preliminary injunction under the more stringent probable success on the merits standard.

### ii. Defendants' Discriminatory Mailing Violates Equal Protection Under The United States And Alaska Constitutions.

Both the United States and Alaska Constitutions prevent unequal treatment between two similarly-situated classes of citizens through their respective equal protection clauses. And under both constitutions, this Court should grant Plaintiffs' request for a preliminary injunction to prevent irreparable harm.

### 1. Equal Protection Clause: United States Constitution.

For many of the same reasons that Defendants' discriminatory mailing violates the Twenty-Sixth Amendment, it also violates the Equal Protection Clause of the United States Constitution, which prevents discriminatory infringements on the fundamental right to vote. After all, the "right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

government."[59] Constitutional government is "best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful."[60]

In *Anderson v. Celebrezze*[61] and *Burdick v. Takushi*,[62] the U.S. Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state actions that burden voting rights. "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it *necessary* to burden the plaintiff's rights."[63] When a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly drawn to advance a state interest of compelling importance."[64] Less severe burdens remain subject

[59] *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (right to vote is "regarded as a fundamental political right, because preservative of all rights").

[60] *Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012) (citation omitted).

[61] 460 U.S. 780 (1983).

[62] 504 U.S. 428 (1992).

[63] *Burdick*, 504 U.S. at 433–34 (quotation marks and citation omitted, emphasis added).

[64] *Norman v. Reed*, 502 U.S. 279, 280 (1992).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 23

to balancing. But "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"[65]

Here, regardless of whether the burden on all voters under 65 is characterized as slight or severe, the mismatch between Defendants' asserted interest—making it easier for all voters to choose how to vote—and its action—mailing absentee ballot applications only to those 65 and older—renders the action unconstitutional. As explained above, there is no "legitimate state interest" in choosing a single age cohort to assist in voting while leaving out all other cohorts who are equally vulnerable and equally eligible to vote by mail.

Defendants' decision is also invalid under standard age-discrimination under the Equal Protection Clause, even if the fundamental right to vote were not burdened. "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."[66] If the state interest is in reducing gatherings or protecting vulnerable populations, the selective mailing completely misses the mark, twice: it is underinclusive because it leaves out large swaths of vulnerable Alaskans and overinclusive because it includes

---

[65] *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288–89).

[66] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

many people 65 or older who are at low risk or who may have no trouble

accessing absentee ballots without the mailing.

### 2. Equal Protection Clause: Alaska Constitution.

Article I, section 1 of the Alaska Constitution provides "that all persons

are equal and entitled to equal rights, opportunities, and protection under the

law."[67] This unequivocal constitutional "equal protection guarantee requires

'equal treatment of those similarly situated.'"[68] And the Alaska Supreme

Court has "long recognized that [Alaska's equal protection clause] affords

greater protection to individual rights than the United States Constitution's

Fourteenth Amendment."[69]

The Alaska Supreme Court has established a framework for courts

analyzing alleged equal protection violations under the Alaska Constitution.[70]

---

[67] Alaska Const. art. I, § 1.

[68] *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1135 (Alaska 2016) [hereinafter *Planned Parenthood 2016*] (quoting *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 909 (Alaska 2001) [hereinafter *Planned Parenthood 2001*]).

[69] *ACLU v. State*, 122 P.3d 781, 787 (Alaska 2005) (quoting *Malabed v. N. Slope Borough*, 70 P.3d 416, 420 (Alaska 2003)); *see also Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 245 (Alaska 2006) ("Although the federal constitution sets the minimum protections afforded to individual liberty and privacy interests, the Alaska Constitution often provides more protection." (citing *Valley Hosp. Ass'n v. Mat-Su Coal.*, 948 P.2d 963, 966–67 (Alaska 1997))).

[70] *See Planned Parenthood 2016*, 375 P.3d at 1132-37.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Courts must first identify appropriate "comparison classes," i.e., "whether two groups of people who are treated differently are similarly situated and therefore are entitled to equal treatment under the constitution."[71] Then, courts are directed to engage in a "core equal protection analysis," which is "a flexible three-step sliding-scale."[72] To perform this analysis:

> First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment . . . . Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.

> Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

> Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis. At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between means and ends must be much closer. If the purpose

---

[71] *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 1000 (Alaska 2019) [hereinafter *Planned Parenthood 2019*] (quoting *Planned Parenthood 2016*, 375 P.3d at 1135).

[72] *Planned Parenthood 2016*, 375 P.3d at 1137.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

can be accomplished by a less restrictive alternative, the classification will be invalidated.[73]

By going through this process, it is evident that Plaintiffs are likely to prevail. Because the threshold question of what comparison classes are at issue in this case is clear—(1) Alaskan voters aged 65 and older and (2) Alaskan voters who are younger than age 65—this Court can then proceed to the three-step equal protection analysis.

"Step one . . . requires evaluating the importance of the personal right infringed upon to determine the State's burden in justifying its differential infringement."[74] And because Defendants' discriminatory actions improperly abridge younger Alaskans' fundamental constitutional right to vote, this Court should apply strict scrutiny.[75] Strict scrutiny is especially appropriate in this case because, although "not every burden on the right to vote is subject to strict

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

---

[73] *Planned Parenthood 2016*, 375 P.3d at 1137 (alteration in original) (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984)).

[74] *Planned Parenthood 2016*, 375 P.3d at 1137.

[75] *Miller v. Treadwell*, 245 P.3d 867, 868-69 (Alaska 2010) ("The right to vote 'is fundamental to our concept of democratic government.' " (quoting *Dansereau v. Ulmer*, 903 P.2d 555, 559 (Alaska 1995)) (citing *Bush v. Gore*, 531 U.S. 98, 104 (2000))); *id.* at 869 ("[W]e recognize that the right to vote is key to participatory democracy."); *id.* ("[T]he opportunity to freely cast [one's] ballot is fundamental." (second alteration in original) (quotation omitted)).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 27

scrutiny,"[76] Defendants' discriminatory mailings—which are not authorized by either statute or regulation—were not conducted equitably.[77]

"Step two . . . requires identifying and assessing the State's interests in differently burdening [younger voters'] . . . fundamental . . . rights."[78] Defendants' justification to burden younger voters' fundamental right to vote "must be compelling."[79] And Defendants cannot show that their discriminatory mailing supports even a "legitimate" state interest.[80] As explained above, Defendants' only apparent interest in "promot[ing] both a safe and a secure election"[81] is ill-served, if not undermined, by limiting the mailing of absentee ballot applications only to voters aged 65 and older.

The third and final step requires evaluating whether Defendants' interest "justifies imposing disparate burdens on the two groups of" voters.[82]

---

[76] *Sonneman v. State*, 969 P.2d 632, 637 (Alaska 1998) (citing *O'Callaghan v. State*, 914 P.2d 1250, 1253–54 (Alaska 1996)).

[77] *Id.* ("[B]ecause election laws will inevitably burden the right to vote, 'to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated *equitably* and efficiently[.]'" (second and third alterations in original) (emphasis added) (quoting *O'Callaghan*, 914 P.2d at 1254)).

[78] *Planned Parenthood 2016*, 375 P.3d at 1138.

[79] *Id.* (citation omitted).

[80] *See id.* at 1137.

[81] Exhibit A, page 2 (emphasis omitted).

[82] *Planned Parenthood 2016,* 375 P.3d at 1139.

---

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

And there is no legitimate reason why Defendants would only mail absentee ballot applications to voters aged 65 and older. The CDC does not identify age alone as being a higher risk factor for COVID-19.[83] Approximately one-third of all Alaskans are considered in a high-risk category.[84] The CARES Act provides ample funding to mail absentee ballot applications to all voters.[85] Alaskans under the age of 60 comprise approximately 85% of Alaska's current positive cases.[86] Most older Alaskans either live in the same household or commonly interact with younger Alaskans—during appointments, errands to get groceries and medicine, and the like—so keeping the number of positive cases low for all age groups help protect more vulnerable citizens. [87] Younger Alaskans, who are more likely to live in rural Alaska, also tend to have more limited access to medical care and facilities. Voters 65 years of age and older

---

[83] *See* Branswell, *supra*.

[84] *See* Hollander, *supra* (discussing testimony of state's chief medical officer).

[85] State of Alaska, "COVID-19 Response Funding," May 12, 2020, https://bit.ly/AKFunding.

[86] This data is on the State's official COVID-19 dashboard, at https://coronavirus-response-alaska-dhss.hub.arcgis.com

[87] Zaz Hollander, "As Alaska's Daily COVID-19 Count Hits Another Near-Record, Hospitalizations Aren't Rising As Quickly," (July 9, 2020) (quoting state of Alaska health officials including state epidemiologist, Dr. Joe McLaughlin, as observing that "[o]ther states with spikes among younger people have experienced a subsequent uptick in cases involving older residents"), https://www.adn.com/alaska-news/2020/07/09/alaska-records-another-near-record-increase-in-daily-confirmed-coronavirus-cases/.

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 29

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

also more likely to be white, and are more likely to be located outside of rural Alaska.[88] And mailing only a subset of voters absentee ballot applications is far less effective at protecting poll workers from the protracted public indoor gatherings in-person voting creates.

There is no legitimate reason for Defendants to exclude hundreds of thousands of Alaskan voters from receiving an absentee ballot application in the mail. In fact, all of Defendants' stated reasons attempting to justify the mailing to over-65 voters also weigh even more strongly in favor of a blanket mailing to all voters. Defendants' actions and omissions certainly do not survive strict scrutiny;[89] nor do they survive a lower level of scrutiny, because there is no "substantial relationship between means and ends" as explained above.[90] Defendants' discriminatory mailing defies logic, and fails to treat all Alaskans seeking to exercise their fundamental right to vote equally.

---

[88] *See Kenai Peninsula Borough v. State*, 743 P.2d 1352, 1372 (Alaska 1987) (concluding that "a voter's right to an equally geographically effective or powerful vote . . . represent[s] a significant constitutional interest."); *see also Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 966-69 (Alaska 2005) (considering allegations of geographic discrimination and disparate impacts in the context of an equal protection claim under the Alaska Constitution).

[89] *Planned Parenthood 2016*, 375 P.3d at 1139 (requiring "a compelling state interest and . . . the least restrict means available to accomplish the state's purpose." (quoting *Schiel v. Union Oil Co. of Cal.*, 219 P.3d 1025, 1030 (Alaska 2009))).

[90] *Id.* at 1137 (quoting *Alaska Pac. Assurance Co.*, 687 P.2d at 269-70).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Because Plaintiffs raise a serious and substantial equal protection claim under the Alaska Constitution against Defendants, this Court should grant Plaintiffs' request for a preliminary injunction immediately.[91]

### iii. Defendants' Discriminatory Mailing Violates Substantive Due Process Under The Alaska Constitution.

Defendants' arbitrary and irrational age-based mailing of absentee ballots also violates due process under the Alaska Constitution.[92] Substantive due process protects against "state action that infringes [constitutional rights] . . . in the absence of sufficient government reason."[93] "Substantive due process . . . is meant to guard against unfair, irrational, or arbitrary state conduct that 'shock[s] the universal sense of justice.'"[94] The level of scrutiny employed by courts analyzing substantive due process claims under the Alaska Constitution depends on the nature of the right asserted.[95] But governmental restrictions

---

[91] This Court could alternatively conclude that, under even the higher test for a preliminary injunction, Plaintiffs are likely to succeed on the merits of their equal protection claim under the Alaska Constitution.

[92] *See* Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property without due process of law.").

[93] *Doe v. Dep't of Pub. Safety*, 444 P.3d 116, 124–25 (Alaska 2019) (citing *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1972)).

[94] *Id.* at 125 (alteration in original) (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130 (Alaska 1999)).

[95] *Id.* at 125–26.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 31

on fundamental rights—like the right to vote—are analyzed under strict scrutiny, which requires *both* a compelling government interest and "no less restrictive means of advancing the state interest exists."[96]

In this case, Defendants have violated Plaintiffs' substantive due process rights because their decision to mail absentee ballot applications only to voters aged 65 and older cannot pass even rational basis review. The legislature, recognizing the challenges COVID-19 will pose to elections, authorized Defendants to conduct the primary and general elections entirely by mail this year.[97] The legislature also gave Defendants the authority to promulgate emergency regulations to support a vote-by-mail election.[98] But Defendants have not promulgated any regulations and instead have "unfair[ly], irrational[ly], and arbitrar[ily]" mailed absentee ballot applications to only one subset of voters.[99] This discriminatory decision—made without any readily-apparent statutory authority—"shocks[s] the universal sense of justice."[100]

For all of the same reasons discussed above, Defendants' apparent justifications for their discriminatory actions could not survive even rational

---

[96] *Id.* at 125 (citing *Huffman v. State*, 204 P.3d 339, 345–46 (Alaska 2009)).

[97] 2020 SLA ch. 10, § 9.

[98] *See id.*

[99] *Doe*, 444 P.3d at 125.

[100] *Id.* (quoting *Church*, 973 P.2d at 1130).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 32

basis review.[101] And because Plaintiffs raise a serious and substantial due process claim, this court should grant Plaintiffs' request for a preliminary injunction and order Defendants to mail absentee ballot applications to all voters who have not yet received them immediately.[102]

### iv. Defendants' Discriminatory Mailing Violates The ADA.

A government entity violates Title II of the ADA if a plaintiff can show that: (1) he or she is a "qualified individual with a disability;" (2) he or she was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity;" and (3) that "such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability."[103] Here, Plaintiffs can prove all three elements.

First, Plaintiffs are qualified individuals under the ADA. Plaintiff Disability Law Center is the federally mandated Protection and Advocacy system in Alaska, and is empowered to provide legal advocacy for people with

---

[101] *See supra* Subsection III.B.ii.2.

[102] This Court could alternatively conclude that, under even the higher test for a preliminary injunction, Plaintiffs are likely to succeed on the merits of their due process claim under the Alaska Constitution.

[103] *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

disabilities.[104] And Plaintiff Ms. Stover has severe chronic asthma which puts her at high-risk of complications from COVID-19 and prevents her from being able to safely vote in-person.[105] Plaintiffs therefore meet the first prong.

Second, Plaintiffs were denied the benefits of the state's "services, programs, or activities." It is undisputed that only individuals 65 and older, including many healthy and non-disabled individuals, were provided with the benefit of receiving absentee ballot applications—which makes applying to vote absentee by mail much easier. But Plaintiffs, including thousands of disabled Alaskans, did not get that same benefit. This kind of exclusion is prohibited by the terms of the ADA and by accompanying regulations. For instance, a public entity may not "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;" "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of

---

[104] Complaint at ¶ 22.

[105] Complaint at ¶ 25; *Service v. Union Pac. R.R. Co.*, 153 F. Supp. 2d 1187, 1192 (E.D. Cal. July 30, 2001) (holding that severe asthma can be a disability under the ADA).

achievement as that provided to others."[106] Sometimes public entities are required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."[107] The aids and services must be provided to "protect the privacy and independence of the individual with a disability."[108]

Because Defendants offer absentee voting as a program or service available to all Alaskan voters, they must afford voters with disabilities who are under 65 an equal opportunity to access this program or service as older people without disabilities.[109] As the Fourth Circuit put it, "[e]nsuring that disabled individuals are afforded an opportunity to participate in voting that is *equal to* that afforded others, 28 C.F.R. § 35.130, helps ensure that those individuals are never relegated to a position of political powerlessness."[110] Here, the violation is clear: voters over 65, including those without disabilities,

---

[106] 28 CFR § 35.130(b)(i)–(iii).

[107] 28 CFR § 35.160(b)(1).

[108] 28 CFR § 35.160(b)(2).

[109] *See Nat'l Fed.of the Blind v. Lamone*, No. 14-cv-1631, 2014 WL 4388342, (2014 U.S. LEXIS 123020), at \*11 (D. Md. Sept. 4, 2014) (holding that Maryland's absentee voting program is a program or service under the ADA to which individuals with disabilities must have access because "it is a service that the State has opted to extend to *all* Maryland citizens"); *affirmed* at 813 F.3d 494 (4th Cir. 2016).

[110] *Lamone*, 813 F.3d at 507 (emphasis added).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

are provided material assistance towards participating in the absentee balloting program. They need only return a form mailed directly to their house. Meanwhile, younger voters with disabilities must seek additional help to vote by absentee ballot.

The third prong is also met. It is not sufficient for the State to provide disabled individuals with *some* access to absentee balloting. Instead, "the covered entity must provide meaningful access to private and independent voting."[111] Mailing absentee ballot application to all voters with disabilities enhances the privacy and independence in voting that is so crucial to an individual's right to vote freely. Its denial here violates the ADA.

### v. Separately, The Receipt Deadline For Absentee Ballot Applications Violates 52 U.S.C. § 10502(d) With Respect To The November General Election.

Under the Voting Rights Act ("VRA"), in elections for electors for President and Vice-President—such as the general election to be held this year on November 3, 2020—voters "who may be absent from their election district or unit in such State on the day such election is held" must be able to vote by absentee ballot if they have "have applied therefor not later than seven days immediately prior to such election."[112] This year, that seven day cut-off is October 27, 2020.

---

[111] *Cal. Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1238 (N.D. Cal. 2013).

[112] 52 U.S.C. § 10502(d).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 36

But Alaska law does not comply with the VRA. Under Alaska law, "[a]n application requesting delivery of an absentee ballot to the applicant by mail must be received by the division of elections not less than 10 days before the election for which the absentee ballot is sought."[113] Under the Supremacy Clause, federal law is supreme, and it requires Alaska to process absentee ballot applications for those three additional days. This Court should enter an injunction to ensure that Alaska complies with clear federal law.[114]

## C. The Balance of Hardships Tips Sharply Towards Plaintiffs.

Because of the nature of the inequitable treatment of voters, a problem Defendants themselves created, the balance of hardships tips sharply in favor of granting Plaintiffs' request for a preliminary injunction. The two individual Plaintiffs will be faced with an obvious individual hardship: they must obtain absentee ballots without the benefit of the assistance the State has proved to older voters. And the organizational Plaintiffs will need to expend additional

---

[113] AS 15.20.081(b).

[114] Plaintiffs recognize that it is critical that absentee ballot applications are received as early as possible to give all parties as much time to have a completed ballot returned on time. They thus will encourage all voters to request a ballot as soon as possible and will not recommend to any voter to wait until the last minute. Indeed, in this lawsuit, Plaintiffs seek to have *all* voters receive absentee ballot applications as soon as possible, which will ensure that as many applications are processed well in advance of the general election. Still, it is certain that some number of absentee ballot applications will be received by Defendants nine, eight, or seven days before the general election. Despite the ten-day deadline under Alaska law, the State must process those applications under federal law, which takes priority under the Supremacy Clause.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

resources assisting their younger clients and members that they will not need to expend if the State ended the discriminatory practice and sent every Alaskan an absentee ballot application and detailed instructions about voting.

By contrast, there is little to no hardship on Defendants from complying with a preliminary injunction from this Court. They have already gone through the process of preparing materials, procuring them, and mailing them to a subset of voters, activities for which they received ample CARES Act funding. They now need to simply repeat the process for every Alaska voter who has not received an application yet—something they could have, and should have, done in the first place.

These indisputable facts, coupled with the right every Alaskan voter has to an absentee ballot, means the balance of hardships tips sharply in Plaintiffs' favor.

### D. A Preliminary Injunction Is In The Public Interest.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."[115] And Alaska's health officials and politicians alike have repeatedly emphasized the importance of avoiding public gatherings to stem

---

[115] *Burdick v. Takushi*, 504 U.S. 428, 441 (1992) (quotation marks omitted).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 38

the growth of this troubling pandemic.[116] Thus, the public interest tips strongly in favor of providing every Alaskan assistance in voting by absentee ballot, which will allow Alaskans to express their voices while also protecting one another from potential exposure to COVID-19.

By contrast, there is no public interest in perpetuating Defendants' discrimination here. Defendants cannot claim to be vindicating the public interest by enforcing a duly-enacted law or even their own regulation, which would typically be open to public comment; instead, Defendants unilaterally decided who would get an application and who would not, with no record or official reasoning. Moreover, as mentioned, the selective mailing actually goes *against* Defendants' own stated public interest, which is to "enhance [the State's] outreach efforts to ensure *all* Alaskans have the greatest access to vote in the 2020 primary election."[117] In the end, then, the Plaintiffs' "harm and the public interest are one and the same, because the government's interest *is* the public interest."[118] That common public interest is ensuring that *all* Alaskans have "the greatest access to vote"—and the safest possible summer and fall too.

---

[116] *See supra*, § I.A–B (factual background).

[117] Meyer Press Release (emphasis added).

[118] *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Motion for Preliminary Injunction
*Disability Law Center of Alaska v. Meyer*
Case No. 3:20-cv-173-JMK

Page 39

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

## IV. CONCLUSION

COVID-19 has impacted every Alaskan practically overnight, and Defendants should be commended for promoting the use of absentee ballots for the upcoming primary and general elections. But Defendants improperly crossed a line when they put absentee ballot applications directly in the hands of older voters, while forcing all others to fend for themselves. Defendants have discriminated on the basis of age by only mailing absentee ballot applications to older voters, and in doing so have violated the Twenty-Sixth Amendment, Equal Protection, Due Process, and the ADA.

Plaintiffs—as well as the voters they seek to protect—will be irreparably harmed if this discriminatory action is not rectified immediately, Defendants will not be harmed by expanding their mailing to all Alaskan voters thanks to ample CARES Act funding, the balance of equities and public interest tips sharply in Plaintiffs' favor, and Plaintiffs raise serious and substantial questions on the merits (and in fact are likely to succeed). Accordingly, this Court should grant the motion for a preliminary injunction and order Defendants to immediately mail absentee ballot applications to all registered Alaskan voters who have not yet received one, in order to give all voters the equal opportunity to exercise their fundamental right to vote. Defendants

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

should be further ordered to accept all applications for absentee ballots received up to seven days before the November general election.

Dated this 22nd day of July 2020, at Anchorage, Alaska.

*/s/ Scott M. Kendall*
Scott M. Kendall
Alaska Bar No. 0405019
Samuel G. Gottstein
Alaska Bar No. 1511099
HOLMES WEDDLE & BARCOTT, PC

Jason Harrow (*Pro Hac Vice*)
EQUAL CITIZENS

Michael Donofrio (*Pro Hac Vice*)
STRIS & MAHER LLP
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 22nd day of July 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Margaret Paton-Walsh
Attorney General's Office
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
margaret.paton-walsh@alaska.gov

I further certify that this memorandum does not exceed 10,000 words. The total word count for this memorandum, pursuant to Local Civil Rule 7.4(a), is 9,248 words.

*/s/ Scott M. Kendall*
Scott M. Kendall

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657