IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DISABILITY LAW CENTER OF ALASKA; NATIVE PEOPLES ACTION COMMUNITY FUND; ALASKA PUBLIC INTEREST RESEARCH GROUP; ALEIJA STOVER; and CAMILLE ROSE NELSON, | Case No. 3:20-cv-00173-JMK |
| Plaintiffs, | **ORDER** **DENYING MOTION** **FOR PRELIMINARY INJUNCTION** |
| vs. | |
| KEVIN MEYER, Lieutenant Governor of Alaska; and STATE OF ALASKA, DIVISION OF ELECTIONS, | |
| Defendants. | |

This matter is before the Court on Plaintiffs' motion for preliminary injunction.[1] Defendants oppose the motion.[2] Plaintiffs filed a reply.[3] On August 25, 2020, the Court held a hearing and heard oral argument on this motion. The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Plaintiffs' motion is DENIED.

---

[1] Docket 12.
[2] Docket 22.
[3] Docket 28.

# I.  INTRODUCTION

## A.    Motion Presented

Plaintiffs ask this Court for an order requiring Defendants to "immediately mail absentee ballot applications to all registered Alaskan voters who have not yet received one."[4]  Defendants argue that Plaintiffs are not entitled to preliminary injunctive relief on this matter because they have not met their burden to establish irreparable harm, that the balance of equities and the public interest weighs in their favor; or that they are likely to succeed on the merits, or even raise serious questions going to the merits.[5]

## B.    Background Facts

The parties largely agree on the background facts in this case.  The global pandemic caused by the COVID-19 illness has significantly affected life in Alaska since at least March 2020.  Not long after then, public health officials, in coordination with government leaders, continuously have implemented restrictions on community, economic, and social activity with the aim of limiting person-to-person contact in order to slow the spread of COVID-19.

Every aspect of life outside the home—from grocery shopping, to classroom learning, to daily employment—has had to evolve.  In response to this new reality, Defendants Alaska Division of Elections ("the Division") and Lt. Governor Kevin Meyer (collectively, "Defendants") have made decisions and taken action regarding the upcoming 2020 state elections.

---

[4] Docket 13 at 40.
[5] Docket 22 at 26–29.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                         Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                              Page 2

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 2 of 22

Alaska's legislature and the U.S. Congress have passed legislation to address and provide funds for the State's COVID-19 responses.[6]  Congress earmarked $3 million for Alaska's elections via the CARES Act.[7]  The Alaska Legislature, in SB 241, authorized conducting the entirety of the elections by mail, but, as Defendants note, did not require it.[8]  Defendant Lt. Governor Meyer decided that while the State would still maintain in-person voting in 2020 elections, he would increase efforts and outreach for absentee voting, or vote by mail.[9]

Defendants list precautions taken during the pandemic in their response in opposition[10] to the motion for preliminary injunction:

> Staff are working hard to assure the primary and general elections run smoothly and meet the various critical deadlines set forth in state law.  To this end, in addition to facilitating the many diverse voting options and procedures outlined above, the Division has arranged for social distancing, masks, gloves, and sanitizing in over 440 polling places around the state; recruited election workers to staff those polling places in a year when far fewer people are willing to serve in this role; created new distanced training to avoid unnecessary exposure for smaller communities and its employees; and already processed an unprecedented number of absentee ballot applications.  At the same time, the Division is adjusting its internal workplace protocols to protect the safety of Division employees and poll workers.  In addition, and in order to help mitigate the risk to Alaskans, the Lieutenant Governor explored ways to increase absentee voting while not overwhelming the administrative capacity of the Division of Elections.  To that end, in May 2020 he decided to supplement the Division's new online absentee ballot application system with an additional absentee voting

---

[6]  Alaska SB 241; U.S. Congress Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

[7]  Docket 13 at 4.

[8]  Docket 22 at 7.

[9]  Dockets 13 at 7; 22 at 7–8.

[10]  Docket 22.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                     Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                Page 3

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 3 of 22

outreach effort, mailing voters aged 65 and older a paper absentee ballot application form.[11]

Plaintiffs, who are and represent individuals under the age of sixty-five that also may face high-risk complications from COVID-19, including rural Alaskan residents with decreased access to robust medical treatment facilities, say that Defendants' decision to mail paper absentee ballot application forms only to senior citizen voters is discriminatory and harmful to them. Defendants justify their decision because only voters age 65 and older are (1) known to be high-risk as a group, and (2) can be identified from information that the Division already possessed.

## II.   STANDARD OF REVIEW

### A.   Preliminary Injunctions

"A preliminary injunction is an extraordinary remedy never awarded as of right."[12]  As articulated in *Winter*, the moving party must establish each of the following: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  *Id*.  However, the Ninth Circuit does afford a certain level of malleability to this four-prong test.[13]  In other words, a court is permitted to issue a preliminary injunction when the moving party has effectively raised "serious questions on the merits," as opposed to the more arduous burden of establishing a likelihood of success on the merits, so long as the balance of hardships tips sharply in the

---

[11] *Id.* at 7–8.
[12] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).
[13] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                        Page 4

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 4 of 22

their favor and they satisfy the other two *Winter* prongs.[14]  Regardless of whether the court chooses to adopt a sliding-scale approach, the moving party must "make a showing on all four prongs" of *Winter* to obtain a preliminary injunction.[15]  Ultimately, "[a] preliminary injunction . . . should not be granted unless the movant[s], by a clear showing, carr[y] the burden of persuasion.'"[16]

## B.    Mandatory Versus Prohibitory Injunctions

It also is important to note that a preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits."[17]  A mandatory injunction "orders a responsible party to 'take action.'"[18]  A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'"[19]  In cases such as this one, where a party seeks a mandatory injunction that goes well beyond maintaining the status quo, courts should be extremely cautious.[20]  When a mandatory preliminary injunction is requested, the district court should deny such relief "'unless the facts and law clearly favor the moving party.'"[21]

---

[14] *Id*. at 1135.

[15] *Id.*

[16] *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

[17] *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits").

[18] *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996).

[19] *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

[20] *Martin v. Int'l Olympic Committee*, 740 F.2d 670 (9th Cir. 1984).

[21] *Anderson v. United States*, 612 F.2d at 1114.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                    Page 5

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 5 of 22

## C.    *Purcell* Doctrine

The right to vote is a foundational and fundamental right, but a federal court cannot and should not interfere in a state election absent serious and compelling justification.[22]  Federal courts are "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases."[23]  There are several aspects to litigation relating to election processes that require restraint from the court:    (1) the fact-intensive character of disputes regarding election administration;  (2) the democratic values at stake, which often are accompanied by impassioned partisan animus;  and (3) the procedural posture, which often necessitates expedited consideration of an incomplete record.   "Court orders affecting elections, especially conflicting orders, and themselves result in voter confusion and consequent incentive to remain away from polls.  As an election draws closer, that risk will increase." The Supreme Court has repeatedly emphasized that district courts "should ordinarily not alter the election rules on the eve of an election."[24]

## D.    *Anderson/Burdick* Framework[25]

In evaluating voting schemes, the Court "must first consider the character and magnitude of the asserted injury."[26]  The Court "then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its

---

[22] *Reynolds v. Sims*, 377 U.S. 533, 555, 585 (1964).

[23] *Feldman v. Arizona Sec'y of State's Office*, 843 F.3d 366, 367–68 (9th Cir. 2016) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)).

[24] *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020); *see also Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018).

[25] *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi,* 504 U.S. 428 (1992).

[26] *Celebrezze*, 460 U.S. at 789.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                              Page 6

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 6 of 22

rule.  In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.  Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional."[27]  While the State's "reasonable, nondiscriminatory restrictions" usually can be justified by important regulatory interests, strict scrutiny is required for more serious burdens.[28]

## III.   ANALYSIS

Although there is a heightened standard applicable in this matter, the prudent analytical path begins with an analysis of the four *Winter* prongs that Plaintiffs must establish.

### A.      Whether an Injunction is in the Public Interest

The Court begins with the fourth prong:  whether Plaintiffs have established that an injunction is in the public interest.  Plaintiffs initially assert that the State has repeatedly and consistently advocated for the avoidance of public gatherings in an attempt to curb the spread of COVID-19.  In a vacuum, that contention appears to be correct.  However, rather than weave that assertion into part of a detailed legal argument, Plaintiffs simply conclude:  "[t]hus, the public interest tips strongly in favor of providing every Alaskan assistance in voting by absentee ballot, which will allow Alaskans to express their

---

[27] *Id.* at 789.
[28] *Burdick*, 504 U.S. at 434.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                          Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                                 Page 7

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 7 of 22

voices while also protecting one another from potential exposure to COVID-19."[29] Analysis of what may or may not be in the public interest requires a more thoughtful consideration of context and nuance. The State acknowledges that its aim is to safely conduct an election in the midst of a global and grave pandemic. Understandably, the State and its citizens are concerned about the potential risks associated with voting in person. While the Court knows rational people can agree that protecting the safety of the electorate is a worthy endeavor, the State also must consider the logistical realities of conducting an election. Specifically, and as described above, the State has implemented a number of policies—to not only mitigate the risk to voters, but also to ensure that the State's election apparatus is well-equipped to navigate the logistical burdens of conducting so much of a statewide election exclusively by mail.

While Plaintiffs are correct that reducing the number of individuals who vote in person is important for limiting the spread of COVID-19, they ultimately fail to provide any legal argument in support of the proposition that the public interest is served by that alone. Furthermore, Plaintiffs appear to either ignore the other aspects of conducting a state-wide election that the State must balance with its attempts to limit the spread of COVID-19, or they dismiss the rationale provided by the State. Importantly, Plaintiffs minimize the reality that the State already has provided a path to mail-in voting to all Alaskans, and that remains true regardless of whether this Court were to grant a preliminary injunction. In other words, the public interest is served by the State extending the ability

---

[29] Docket 13 at 39.

to vote by mail to all registered voters. It is less clear that providing written absentee applications to every voter is in the public interest given the State's reasonable concerns regarding its ability to efficiently process written applications to vote by mail.

Plaintiffs bear the burden of establishing that the preliminary injunction sought is in the public interest.[30] Plaintiffs cannot meet that burden merely by providing the Court what amounts to a platitude and conclusory statement. It is not the role of this Court to create theories or legal arguments as to why the public interest might be served by granting the injunction, nor would it be proper.

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.[31]

Thus, this Court cannot find that Plaintiffs have met their burden of persuasion that the preliminary injunction is in the public interest.

## B.   Balance of Equities

Assuming, *arguendo*, that Plaintiffs could establish that the preliminary injunction is in the public interest, this Court's analysis naturally would flow into the third prong: "balance of equities." As provided in *Winter*, a "preliminary injunction is an extraordinary remedy never awarded as of right . . . " and this Court "must balance the

---

[30] *See*, e.g., *DISH Network Corp v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).
[31] *See Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                  Page 9

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 9 of 22

competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences."[32]

Here, Plaintiffs rightly and passionately point to the importance of Alaskans' ability to vote by mail during a global pandemic. However, again, Plaintiffs fail to provide any detailed factual or legal argument that supports their contention that the balance of equities tips in their favor. Rather, Plaintiffs simply conclude that the facts, "coupled with the right every Alaskan voter has to an absentee ballot, means the balance of hardships tips sharply in [their] favor."[33]

This conclusory statement is not only wanting, but appears to this Court to be fatally flawed. First, it views the balance of hardships in a selective and convenient vacuum, conducting the balancing exercise without due consideration of Defendants' perspective. Furthermore, Plaintiffs missed an opportunity to remedy this deficiency in their reply, instead reducing Defendants' articulation of hardship as speculative.[34] Second, and perhaps more damning, Plaintiffs misstate the purported harm. Every voter *does* have the right to an absentee ballot. Nothing about Defendants' actions that give rise to this litigation alters the ability for all Alaskans to vote by mail. Nor do Defendants' actions alter the fact that all Alaskans must apply to exercise their right to vote by mail.

Defendants express a compelling, practical concern regarding the Division of Elections' ability to effectively process high volumes of paper applications as

---

[32] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7.
[33] Docket 13 at 38; *see* Docket 28 at 22–23.
[34] Docket 28 at 22–23.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*  Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction  Page 10

Case 3:20-cv-00173-JMK  Document 36  Filed 09/03/20  Page 10 of 22

justification for preferring that the majority of Alaskans utilize the online application apparatus. Plaintiffs fail to meaningfully counter that position, and instead claim that this concern could be addressed by Defendants adopting a different policy approach. Even if that were true, however, courts must give deference to the professional judgment of States concerning the prudence or efficacy of its approach to conducting elections.[35] Given all these considerations, Plaintiffs cannot establish that the balance of equities favors granting a preliminary injunction.

## C.     Likelihood of Success on the Merits

Even though Plaintiffs have failed to establish that their claims satisfy either the public interest or balance of equities prongs, this Court still is compelled to examine the first *Winter* prong: likelihood of success on the merits.[36] For the upcoming election, all Alaskans eligible to vote: (1) are permitted to vote by mail; (2) must fill out an application to vote by mail; and (3) can choose among several methods to apply to vote by mail, including options to complete an online or paper application. Plaintiffs contend that the State action here, providing Alaskans age sixty-five and older with a written absentee ballot application, warrants strict or heightened scrutiny.

---

[35] *See* U.S. CONST. art. I § 4; *see also McDonald v. Bd. Of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969).

[36] Although Plaintiffs put forward six separate claims in their opening brief, Plaintiffs "no longer seek preliminary injunctive relief with respect to their claims under the [Americans with Disabilities Act] and 52 U.S.C. § 10502," and, accordingly, this Court will not contemplate the likelihood of success on the merits for those two claims.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                              Page 11

Case 3:20-cv-00173-JMK    Document 36    Filed 09/03/20    Page 11 of 22

To support this claim, Plaintiffs cite to *Reynolds v. Sims*[37] and *Miller v. Treadwell*.[38] However, each of those cases is immediately distinguishable from the present matter. In *Reynolds*, the Supreme Court considered an equal protection claim relating to a state's legislative apportionment arrangement, or, in other words, a state action that served to dilute the votes of certain voters. In *Miller*, the Alaska Supreme Court upheld a challenge to the manner in which the State considered and tallied write-in votes, or, in other words, the possibility that certain Alaskans would be denied the vote they had submitted.[39] While both cases do stand for the proposition that "the right of the citizens to cast their ballots and thus participate in the selection for those who control their government is one of the fundamental prerogatives of citizenship,"[40] neither case necessarily suggests that this Court apply strict scrutiny in the present matter.

More importantly, judicial analysis in the realm of election litigation is not a binary construct. The Supreme Court has established and maintained that a deferential analysis of electoral logistics typically is appropriate because, "as a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."[41] This Court must be cautious and acknowledge that subjecting every voting regulation or methodology to strict scrutiny and, thus, requiring that the regulation be narrowly tailored to advance a

---

[37] 377 U.S. 533 (1964).

[38] 245 P.3d 867 (Alaska 2010).

[39] *Miller v. Treadwell*, 245 P.3d 867, 868 (Alaska 2010) (quoting *Carr v. Thomas*, 586 P.2d 622, 625 (Alaska 1978).

[40] *Miller v. Treadwell*, 245 P.3d at 868 (citing Carr v. Thomas, 586 P.2d at 626 (quoting Sanchez v. Bravo, 251 S.W.2d 935, 938 (Tex. Civ. App. 1952)).

[41] *Storer v. Brown*, 415 U.S. 724, 730 (1974).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                              Page 12

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 12 of 22

compelling state interest "would tie the hands of States seeking to assure that elections are operated equitably and efficiently."[42]  Fortunately, courts have adopted an approach that offers the appropriate malleability to navigate challenges relating to the administration of elections.  The *Anderson-Burdick* framework prescribes a sliding-scale methodology, where the degree of scrutiny is a product of the "character and magnitude" of the burden on voting rights.[43]  Accordingly, actions that serve to effect a severe burden on the right to vote will be subject to strict scrutiny, whereas actions that impose tempered or minimal burdens on the right to vote will be subject to a lenient rational-basis scrutiny.[44]

Before considering Plaintiffs various claims, and whether they are likely to succeed on the merits, this Court must attempt to quantify the nature or severity of the burden on voting rights in this case.  Although the term "severe" is not clearly defined in the context of the judicial review of electoral mechanics, the Court can garner a better sense of the types of actions that have been described as severe or not severe and make natural and objective comparisons to the present matter.  Starting with *Burdick*, involving a challenge to Hawaii's ban on write-in ballots, the court determined that the ban was constitutional, and that such a burden was both "limited" and "slight."[45]  In doing so, the *Burdick* court highlighted that "the function of the election process is "to winnow out and finally reject all but the chosen candidates," not to provide a means of giving vent to "short-

---

[42] *Celebrezze*, 460 U.S. at 788.
[43] *Id.*; *Burdick*, 504 U.S. 428; *see also McClure v. Galvin*, 386 F.3d 36, 41 (1st Cir. 2004) ("[T]he Supreme Court has suggested something of a sliding scale approach and has noted that there is no 'bright line' to separate unconstitutional state election laws from constitutional ones.") (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 350 (1997)).
[44] *Burdick*, 504 U.S. at 434 (quoting *Celebrezze*, 460 U.S. at 789).
[45] *Id.* at 438–39.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*  Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction  Page 13

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 13 of 22

range political goals, pique, or personal quarrel[s]."  Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently."[46]  In *Timmons v. Twin Cities Area New Party*, the court subjected a Minnesota ban on fusion candidates to a flexible standard.[47]  Similarly, in *Storer v. Brown*, the court evaluated under a flexible standard a California law that required independent candidates to have disaffiliated from a political party at least one year before running as an independent.[48]  Compare that to *Dunn v. Blumstein*, where the court applied a higher standard of review in invalidating a Tennessee law that required a would-be voter to have been a resident for a year in the state and three months in the county.[49]

Understandably, courts also have treated cases involving burdens and abridgments different than those that directly impact the right to vote itself.  For the former, courts have almost exclusively applied a lesser standard of analysis.  For example, in *Crawford v. Marion County Election Bd.*, the Seventh Circuit weighed the justifications of early voting restrictions against the First and Fourteenth Amendment rights of the plaintiffs.[50]  On review, the Supreme Court, considering both equity and efficiency, agreed that the *Anderson-Burdick* framework dictated that the legislation in question did not

---

[46] *Id.* at 438 (citation omitted) (quoting *Storer v. Brown*, 415 U.S. at 735).
[47] 520 U.S. 351 (1997).  Electoral fusion is an arrangement where two or more political parties support a common candidate in hopes of pooling the votes so that all those parties may secure a controlling majority.
[48] *Storer v. Brown*, 415 U.S. at 736.
[49] 405 U.S. 330 (1972).
[50] 472 F.3d 949 (7th Cir. 2007).

warrant strict scrutiny.[51]  Which brings this Court to two cases that arguably are the most similar to the present matter:  *Texas Democratic Party v. Abbott*[52] and *Short v. Brown.*[53]

In *Texas Democratic Party*, the Fifth Circuit considered a challenge to the state regarding its approach to voting by mail during the COVID-19 pandemic.  Although there were a number of procedural and rhetorical complexities, at its core, the plaintiffs claimed that Texas's rules for voting by mail discriminated by age in violation of equal protection and the Twenty-Sixth Amendment.[54]  Texas provides those aged sixty-five and older with the option to vote by mail,[55] and prohibits anyone under the age of sixty-five from voting by mail absent presenting a valid justification.  Similarly, the plaintiffs sought a preliminary injunction, which the District Court granted.  The Fifth Circuit reversed.  In doing so, the court attempted to quantify the alleged harm as the precursor to determining the appropriate level of judicial scrutiny.  While the court recognized that only allowing residents age sixty-five and older to vote by mail facially discriminated on the basis of age, the court concluded that strict scrutiny was not appropriate.  The court relied heavily on *McDonald v. Board of Election Commissioners of Chicago*, which involved an Illinois statute that denied certain inmates mail-in ballots.[56]  The *McDonald* court noted that restrictions related to absentee ballots *did not* restrict the right to vote, because the inmates in question possessed alternative methods of voting.  As result, the *McDonald* court applied

---

[51]  *Id*. at 204.
[52]  961 F.3d 389 (5th Cir. 2020).
[53]  893 F.3d 671 (9th Cir. 2018).
[54]  *Texas Democratic Party*, 961 F.3d at 395.
[55]  Texas Election Code § 82.003.
[56]  394 U.S. 802 (1969).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*          Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                    Page 15

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 15 of 22

a rational-basis review and upheld the absentee voting restriction. Of particular import, the court noted that the state "need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked."[57] Resting on the shoulders of *McDonald*, the Fifth Circuit concluded that the state "ha[d] a proper interest in helping older citizens to vote, and its decision to permit them to do so by mail is a rational way to satisfy that "laudable state policy."[58] Furthermore, the Circuit Court opined that "[i]f anything, [COVID-19's] existence proves the reasonableness of Texas's approach, given that older persons have a greater risk of becoming seriously ill or dying from it, as the record demonstrates."[59]

In *Short v. Brown*, the Ninth Circuit considered a challenge to a California scheme that permitted voters in some counties to receive a mail-in ballot automatically, while simultaneously requiring voters in other counties to register to receive a mail-in ballot.[60] In that case, the Ninth Circuit upheld the District Court's denial of the plaintiff's motion for a preliminary injunction.[61] In doing so, the court first looked to the *Anderson-Burdick* framework to determine the applicable level of scrutiny. The court noted that the California approach made it "easier for some voters to cast their ballots by mail," but that the right to vote by mail already existed for all voters.[62] Perhaps most importantly, the court concluded that "[t]o the extent that having to register to receive a mailed ballot could

---

[57] *Id*. at 809.
[58] *Texas Democratic Party*, 961 F.3d at 406 (quoting *McDonald*, 394 U.S. at 811).
[59] *Id*.
[60] 893 F.3d 671, 676 (9th Cir. 2018).
[61] *Id*. at 676.
[62] *Id*. at 677.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                              Page 16

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 16 of 22

be viewed as a burden, it is an extremely small one, and certainly not one that demands serious constitutional scrutiny."[63]  The court gave weight to the fact that plaintiffs failed to introduce evidence that the state action would prevent anyone from voting and that plaintiffs failed to cite to "any authority explaining how a law that makes it easier to vote would violate the Constitution."[64]

Based on the relevant case law, this Court can arrive at only one conclusion: the burden imposed by Defendants' actions in this matter do not warrant strict scrutiny.

### (1) Defendants' discriminatory mailing violates the Twenty-Sixth Amendment of the United States Constitution

The Twenty-Sixth Amendment provides:

> The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

At the foundation of Plaintiffs' Twenty-Sixth Amendment claim is that Defendants' actions abridged the right to vote for Alaskans between the age of eighteen and sixty-four.  It is crucial for this Court to first consider whether the Twenty-Sixth Amendment is implicated.

Given the fact that all Alaskan registered voters, regardless of age, possess the ability to vote either in person and by mail, it is clear that Defendants have not denied the "right to vote" in violation of the Twenty-Sixth Amendment.  Thus, this Court must consider whether Defendants' actions intend to, or in practice do, "abridge" the right to

---

[63] *Id.*
[64] *Id.* at 677–78.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                Page 17

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 17 of 22

vote.  To "abridge" means to "curtail, lessen, or diminish; to reduce the extent or scope of."[65]  Congress, through the Voting Rights Act, has defined "denial or abridgement" as when voting is "not equally open to participation by members of a class of citizens . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[66]  Here, Defendants' act of sending paper ballot applications to older voters, while doing nothing that would impede the present ability of voters under age sixty-five to apply for a vote-by-mail ballot, cannot reasonably be construed as an abridgment.  Given that this Court is not convinced that any Alaskan's rights have been abridged, it also must conclude that Plaintiffs' Twenty-Sixth Amendment claim does not constitute a claim that is likely to succeed on its merits.

> ### (2) Defendants' discriminatory mailing violates equal protection under the United States and Alaska Constitutions

Here, Plaintiffs seem to acknowledge the applicability of the *Anderson-Burdick* framework, and appear to accept that Defendants' actions might not constitute a severe burden.[67]  But, then, without citing any cases directly on point, Plaintiffs conclude that Defendants' asserted interest simply is illegitimate.  Specifically, Plaintiffs claim that there is "no legitimate state interest in choosing a single age cohort to assist in voting while leaving out all other cohorts who are equally vulnerable and equally eligible to vote by mail."[68]  This Court takes issue with several aspects of those contentions.

---

[65] OXFORD ENGLISH DICTIONARY (3d ed. 2009).
[66] 52 U.S.C. § 10301(b).
[67] The *Anderson-Burdick* framework applies equally to Plaintiffs' claims under both the U.S. and Alaska Constitutions.  *See Sonneman v. State*, 969 P.2d 632, 636–38 (Alaska 1998).
[68] Docket 13 at 24.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                  Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                                     Page 18

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 18 of 22

First, Plaintiffs' suggestion that Defendants arbitrarily selected one age group is contradicted both by the facts in this case and by Plaintiffs' own briefing. Plaintiffs repeatedly reference the Center for Disease Control ("CDC") findings that "risk increases with age and the presence of certain underlying medical conditions."[69]  As relevant here, the CDC posts its COVID-19 related data for public consumption, and that data indicated that death rates are 90 times higher for individuals aged 65–74, 220 times higher for individuals aged 75–84, and 630 times higher for individuals aged 85 and older.[70]  Thus, it is disingenuous to suggest that Defendants selected people age 65 and older arbitrarily, or that all other age groups are equally vulnerable.  Plaintiffs fairly point to those Alaskans who possess an underlying medical condition that might make them more vulnerable to COVID-19.  Understandably, however, Defendants are not in a position where they can readily, easily, or confidently identify Alaskans who might qualify under that criteria.

Furthermore, it is important to note that, given that the burden is so slight— that is, voters under 65 must procure an absentee ballot application on their own initiative, either via the internet, or some other way—Defendants' general interest in protecting an easily and readily identifiable vulnerable class of Alaskans is objectively rational.[71] Expecting perfection in the State's voting approach or methodology when conducting a

---

[69] *Id*. at 6.
[70] https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalizatio n-death-by-age.html.
[71] *See Burdick*, 504 U.S. at 434, 439–40; *cf. McDonald*, 394 U.S. at 809 (observing that under rational basis review, "a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind'").

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                    Page 19

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 19 of 22

general election in the midst of a novel and evolving global pandemic suggests an impossible and unrealistic standard. Courts should "permit[] states to serve 'as laboratories for experimentation to devise various solutions where the best solution is far from clear.'"[72]

Defendants' actions in this case do not in any way restrict individuals of any age group from exercising the right to vote, nor do they restrict mail-in voting to any particular age group. Given the lack of a severe or even meaningful burden, coupled with Defendant's legitimate endeavor to protect Alaskans who are particularly vulnerable to COVID-19, Plaintiffs have failed to convince this Court that its equal protection claims are likely to succeed on the merits.

### (3) Defendants discriminatory mailing violates substantive due process under the Alaska Constitution

Plaintiffs next contend that Defendants' actions violate substantive due process under the Alaska Constitution, noting that "[s]ubstantive due process . . . is meant to guard against unfair, irrational, or arbitrary state conduct that shock[s] the universal sense of justice."[73] This Court is not convinced that any aspect of Defendants' actions could be fairly described as unfair, irrational, or arbitrary. On the contrary, Defendants' actions here clearly are rational and reasoned. Plaintiffs also contend that because the right to vote is a fundamental right, strict scrutiny applies. However, as this Court previously has found, Defendants' actions do not restrict any Alaskans' right to vote. The burden here is so minimal it almost defies precise articulation. It would be illogical under the *Anderson-*

---

[72] *Pub. Integrity*, 836 F.3d at 1028.
[73] Docket 13 at 31 (quoting *Doe v. Dep't of Pub. Safety*, 444 P.3d 116, 124–25 (Alaska 2019).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                              Page 20

Case 3:20-cv-00173-JMK    Document 36    Filed 09/03/20    Page 20 of 22

*Burdick* framework to suggest any standard of review more stringent than rational basis. This Court previously has concluded that Defendants' actions are likely to survive a rational basis review. As a result, Plaintiffs have failed to convince this Court that their due process claims under the Alaska Constitution are likely to succeed on the merits.

## D.    Likelihood of Irreparable Harm Absent an Injunction

Finally, this Court considers the remaining *Winter* prong, the likelihood of irreparable harm. Following the analysis above—that Defendants have not abridged the voting rights of Alaskans under age sixty-five—Plaintiffs cannot establish that this injunction would prevent irreparable harm to them and others. In fact, this Court heard argument that harm would increase—Defendants noted that the Division of Elections may be less likely to efficiently process paper vote-by-mail applications if the preliminary injunction were granted because the State would anticipate a significant volume of applications that it would not have the capacity to handle on the necessary timeline. The Court is persuaded by that concern and finds that the requested injunctive remedy may actually increase harm to Alaska's voting process and its voters.

## IV.    PRELIMINARY RELIEF IS NOT WARRANTED

To echo the court in *Short v. Brown*, there is nothing in the Constitution, Supreme Court precedent, or Ninth Circuit precedent that would suggest that the Court micromanage Alaska's election process to this degree.[74] Not only would such an approach be counterproductive, it would disregard that "[s]tates . . . have broad powers to determine

---

[74]    893 F.3d 671, 676.

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                              Page 21

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 21 of 22

the conditions under which the right of suffrage may be exercised."[75]  No one disputes that the right to vote is fundamental.[76]  But, as described above, not all election laws impose constitutionally suspect burdens on that right.  Here, where the purported abridgment is so slight, and the requested remedy of an affirmative injunction so extreme, it is impossible for this Court to determine that the *Winter* prongs are sufficiently satisfied.

For the reasons discussed above, Plaintiff's Motion for Preliminary injunction is **DENIED**.

IT IS SO ORDERED this 3rd day of September, 2020, at Anchorage, Alaska.

_____
*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[75] *Lassiter v. Northampton Cty. Bd. of Elections*, 360 U.S. 45, 50, 79 S. Ct. 985, 3 L. Ed. 2d 1072 (1959).

[76] *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966).

*Disability Law Center of Alaska, et al. v. Meyer, et al.*                    Case No. 3:20-cv-00173-JMK
Order Denying Motion for Preliminary Injunction                                              Page 22

Case 3:20-cv-00173-JMK   Document 36   Filed 09/03/20   Page 22 of 22